IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DAWN MARIE LEWIS, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   Civil Action No.: 5:12-CV-00358-KOB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On October 2, 2009, the claimant, Dawn Marie Lewis, applied for disability insurance benefits under Title XVI of the Social Security Act. (R. 14). The claimant alleges disability commencing on August 28, 2009 because of pain in her hands, knees, back and neck. (R. 216). The Commissioner denied the claim both initially and on reconsideration. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on April 19, 2011. (R. 14). In a decision dated August 1, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for disability insurance benefits. (R. 27). On December 9, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether the ALJ properly applied the Eleventh Circuit's three-part pain standard; (2) whether the ALJ relied too heavily on the opinion of Dr. Carmichael, a reviewing physician, to the exclusion of other evidence; and (3) whether substantial evidence supports the ALJ's residual functional capacity ("RFC") determination.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view

the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *See* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must first consider whether the claimant demonstrated an underlying medical condition, and then "*either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

Further, in determining a claimant's RFC, the ALJ should consider all the evidence presented by the claimant. *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1545(a)(3)) ("The ALJ makes an RFC finding based on all the 'relevant medical and other evidence.'").  However, the burden to prove disability rests with the claimant. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

## V. FACTS

The claimant has a G.E.D. and was fifty-five years old at the time of the administrative hearing. (R. 223, 107). Her past work experience includes employment as a child care teacher and security guard. (R. 188). The claimant alleges she is unable to work because of back, neck and knee pain. This pain is caused by degenerative disc disease, neurofibromatosis and arthritis in her knees. The claimant also claims she is unable to work because of carpal tunnel syndrome, tumors on her hand, and arthritis in her thumb. (R. 216).

*Physical Limitations*

On April 22, 1993, an MRI of the cervical spine revealed an enlarged left C2-3 neural foramen, suggesting a possible neurofibroma. (R. 434). A later MRI of the thoracic spine, on September 17, 1997, revealed a large neurofibroma at the T8-9 measures. (R. 435). On April, 15, 2002, the clamant had an MRI of the lumbar and thoracic spine that revealed degenerative disc changes, but no disc herniation, stenosis or other significant findings. (R. 438).

On June 14, 2006, the claimant was referred to Dr. John H. Walker for numbness and tingling in her right hand. Dr. Walker noted good grip strength and a mass on the claimant's right wrist. (R. 255). On August 2, 2006, Dr. Walker stated that the claimant's nerve studies reveal mild carpal tunnel syndrome; however, he opined that it was not serious enough for surgery. (R. 254). On August 22, 2006, Dr. Walker scheduled surgery to remove a hand lesion

and tumor in her hand. He further noted that claimant's neck pain was "much improved." (R. 252-53). On a follow up after surgery on September 14, 2007, Dr. Walker stated that the claimant could return to work on September 24th. (R. 251). The claimant returned to Dr. Walker on October 17, 2007 with a painful mass on her right little finger. Dr. Walker limited her to carrying one to two pounds and no work, (R. 250); however, on November 28, 2007, Dr. Walker cleared her for normal activity. (R. 249).

On November 10, 2009, the claimant saw Dr. Walker complaining of hand pain, especially a dorsal mass on her right small finger. The claimant told Dr. Walker she was not worried about her thumbs because the pain had not changed. (R. 247). On November 24, 2009, Dr. Walker diagnosed her with two probable neurofibroma and a glomus tumor in the right small finger and some arthritis in her thumb. Dr. Walker scheduled surgery to remove the three masses and prescribed her Lorcet Plus for the pain. (R. 414-15). In her post-operation evaluation, Dr. Walker noted that the claimant was doing very well and prescribed five mg Lortabs, with no refill. (R. 416).

On January 27, 2010, Dr. Prem K. Gulati examined the claimant and noted her lower back pain, difficulty using both hands, and bilateral knee pain. She reported the claimant stated that the medication for the back pain did not help, although a knee brace helped her knee pain. She stated that the claimant has no difficulties getting on and off the examination table and was fully able to do a heel and toe walk. But she also cited that the claimant had difficulty squatting down. Regarding the claimant's hands, she reported that the constant sharp hand pain had not improved. Although the claimant could not make a fist with her right hand, she could open a doorknob, close buttons, tie shoelaces and hold small objects. In conclusion, Dr. Gulati opined

that the claimant could not perform any gainful employment until rehabilitation from finger surgery. (R. 378-80).

On February 09, 2010, Dr. R. Glenn Carmichael reviewed the claimant's medical record and opined that the claimant had the RFC to perform medium work with some safety precautions. He noted her neurofibromatosis of digit, degenerative arthritis of knee, meniscus tear[1] and hypertension before making his assessment. (R. 381).

On February 23, 2010, the claimant described her left knee pain as a level seven to Dr. Richard C. Burnside. Dr. Burnside reported no fluid, clicks or pops, and a good range of motion in left knee. He prescribed her Mobic and diagnosed her with degenerative arthritis and a left knee sprain. (R. 382-83). On March 17, 2010, the claimant returned with problems in her left knee. She stated the Mobic did not help. (R. 384). When the claimant returned again with knee pain on March 31, 2010, Dr. Burnside stated he had no explanation for her pain because her arthritis was within normal limits. (R. 385). After an MRI scan on April 08, 2010, Dr. Burnside reported that the claimant had a torn medial meniscus in her right knee, "a fair amount of patellofemoral joint arthritis" and a Baker's cyst. (R. 386).

On February 21, 2011 at the UAB Health Center in Huntsville, the claimant stated that she was "doing well in general and . . . tolerating her medications." (R. 452). On March 21, 2011, the claimant reported mild improvement in her symptoms from her treatment with the chiropractor. The physicians at the health center then referred the claimant to physical therapy for her knees and to an orthopedic surgeon for her thumb; however, she declined physical therapy, preferring to do her stretches at home. (R. 449-451). On March 30, 2011, the claimant reported that her pain had not improved from her treatment at the chiropractor. However, the

---

[1] Dr. Carmichael erroneously stated that this meniscus tear was in her left knee. (R. 381). Both Dr. Burnside and the claimant stated that the tear was in her right knee. (R. 386, R. 114).

6

health center reports noted that she tolerated her current treatment, various types of stretches, well. (R. 446).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested and received a hearing before an ALJ. (R. 95). At the hearing, the claimant testified she had previous work experience at the Progressive Child Development Center. She further testified that she has no longer worked there since August 28, 2009. (R. 109). The claimant testified she was let go because, in 1999, her doctor gave her a ten pound lift restriction. She testified that under the new certification her position would require an ability to lift fifty pounds. Afterwards, the claimant testified she filed for unemployment and was denied. (R. 110).

The claimant testified that since her two surgeries, her hands give her constant pain and severely limit her ability to grip and lift items. She testified that thing would fall out of her hands "trying to cook sometimes." (R. 111-12). She testified that while at work she tripped and fell, causing a torn meniscus in her right knee. (R. 114). She further testified that because of her neck pain she has trouble getting up in the morning and looking down. (R. 113). She testified these pains, in combination with her left knee pain and back pain, prevent her from doing physical activity for more than twenty minutes or walking for more than fifteen minutes. After that time, she stated, she needed to rest for fifteen to twenty minutes. She testified that the pain made it difficult to even lift 10 pounds, although she did it at work when required to do so. She testified that she would take Aleve for the pain because her other medication would put her to sleep. (R. 118).

She then testified that having sat for ten minutes to give her testimony, she was experiencing a little pain in her back, which she attributed to her degenerative disk disease. She testified that this type of back pain was common and required her to use special pillows under her neck and knees to sleep. (R. 123-24). In response to the ALJ's questioning, the claimant testified that she had not seen a physician for her knees since Dr. Burnside. She further testified she had not seen a physician for her carpal tunnel since Dr. Walker. (R. 126-27).

The claimant then testified that she did not wash dishes, iron, sweep, mop, vacuum, do yard work, garden, mow the lawn, hunt, fish, sew or drive. She did, however, do laundry and fold clothes with assistance from her daughter. She testified she would occasionally take out a small bag of garbage. She testified she would go to the grocery store occasionally with her daughter. (R. 127-29).

Next, the ALJ examined a vocational expert. The expert testified that the claimant's past work at the Progressive Union Child Care Center most resembled a child care teacher under the DOT. The expert then testified that a hypothetical individual - who could lift fifty pounds occasionally and twenty-five pounds frequently; walk, stand and sit for six of eight hours in a work day; never use ropes, ladders or scaffolds; kneel and crawl occasionally; stoop and crouch frequently; and never be exposed to extreme temperatures - could work as a child care teacher. She, however, testified that such an individual, because of the temperature limitations, could not be employed as a security guard. (R. 132-33).

*The ALJ's Decision*

On August 1, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 27). First, the ALJ found that the claimant met the insured status requirements of the Act through December 31, 2013. Next, the ALJ found that the

8

claimant had not engaged in substantial gainful activity since the onset of her disability. He then determined that the claimant suffered from "the following severe impairments: neurofibromatosis, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, carpal tunnel syndrome, and arthritic changes in the thumb." (R. 16). The ALJ then concluded that her impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 19).

The ALJ next considered the claimant's medical impairments and subjective allegations of pain to determine whether she had the RFC to perform past relevant work. (R. 20). While the ALJ determined the claimant's medically determinable impairments could reasonably cause the alleged symptoms, he found that the claimant's testimony regarding the severity of her symptoms was not credible. (R. 21).

To support this finding, the ALJ first referenced inconsistencies in the claimant's prior statements and her testimony at the hearing. He observed that on March 21, 2011 the claimant stated she had noticed mild improvements in her pain after seeing a chiropractor for a year and that on August 2, 2006 she was assessed with much improved neck pain. (R. 22). He further noted her statement on September 18, 2008, that she "did not have significant problems regarding her hand or skin lesions." The ALJ cited her statement that she is "not too worried about" the pain in her left thumb and base of her right thumb because it has "not really changed." The ALJ noted that on February 21, 2011, the claimant reported being "well in general and … tolerating her medications." (R. 23). The ALJ determined these prior statements were inconsistent with her subjective testimony. (R. 22).

Second, the ALJ referred the diagnostic evidence of the claimant's condition. The ALJ cited that she has no nerve root compression or disc herniation in her spine, while

acknowledging that the MRI did demonstrate degenerative changes in the lumbar spine. The ALJ stated that Dr. Burnside, on March 17, 2010, could not explain the claimant's pain because her Arthritis Profile was within normal limits. The ALJ noted that in her consultative examination with Dr. Gulati, the claimant had full range of motion in her spine, had no difficulties getting on and off the examination table, walked with normal gait, completed a heel and toe walk without any difficulty and did straight leg raises to ninety degrees. (R. 22). He also observed that the claimant's August 2, 2006, nerve studies only revealed mild carpal tunnel syndrome and no evidence of ulnar nerve compression. Regarding the claimant's hands, the ALJ cited Dr. Gulati's observations that range of motion in all but the right little finger were normal, grip strength was normal and manipulation of the upper extremities was normal (except for the fifth finger). He also referenced Dr. Walker's recommendation, on November 28, 2007, that she return to normal work. The ALJ concluded that the entirety of the diagnostic evidence was inconsistent with the claimant's "level of pain that she allege[d] at the hearing." (R. 23).

The ALJ also noted that the claimant had applied for unemployed benefits. Because filing for unemployment benefits "entails an assertion of the ability to work," he concluded that this indicated an ability to work and detracted from her credibility. (R. 23).

Finally, the ALJ cited the claimant's statements in her Function Report, (R. 196-203), as evidence against her credibility. He noted her stated ability to prepare breakfast and perform household chores for up to two hours. He specifically referred to her statement that she "prepares complete meals daily." He further references her ability to shop for "food, clothing, and household supplies." He concluded that these activities were inconsistent with the symptoms alleged at the hearing. (R. 23).

Further, the ALJ "attributed significant weight" to Dr. Carmichael's physical summary that found that the claimant could perform medium work with frequent handling and fingering. The ALJ noted that this opinion was consistent with the weight of the medical evidence. (R. 25).

The ALJ stated that he "attribute[d] little weight to the opinion of Dr. Gulati." Specifically, he found Dr. Gulati's assertion that the claimant could not be gainfully employed to be inconsistent with the weight of the medical evidence, including Dr. Gulati's own examination. The ALJ concluded that, despite Dr. Gulati's assessment, "some limitation in the claimant's ability to bend the 5th finger of her right hand does not render her incapable of performing gainful employment." (R. 26).

The ALJ then determined that the claimant could perform medium work; could carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk or sit for six hours in an eight hour work day; and perform frequent overhead reaching, fingering and feeling. (R. 20). Based on these findings and testimony from the vocational expert, the ALJ concluded the claimant was capable of performing her past relevant work as a childcare worker and, therefore, is not disabled under the Social Security Act. (R. 26).

## VI. DISCUSSION

The court finds that that the claimant's arguments do not merit a reversal of the ALJ's decision. First, the ALJ properly applied the pain standard when discrediting the claimant's testimony. Second, the ALJ did not err by according Dr. Carmichael's assessment significant weight. Finally, the ALJ's RFC findings were supported by substantial evidence.

*Pain Standard*

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. To the contrary, the court finds the ALJ properly applied the pain standard.

When a claimant attempts to establish disability through her testimony of pain or other subjective symptoms, the three-part pain standard applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). To meet the pain standard, a claimant must demonstrate "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The ALJ may discredit a claimant's subjective testimony of pain if he does so specifically and articulates his reasons for doing so. *Brown*, 921 F.2d at 1236. Failure to articulate adequate reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*. However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (internal citations omitted).

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating the alleged pain; however, he found that the entirety of the evidence was inconsistent with the claimant's alleged symptoms.

The ALJ's explicitly articulated his reasons for discrediting the claimant's alleged symptoms, and these reasons were supported by substantial evidence. The ALJ cited previous statements by the claimant that were inconsistent with her testimony. He noted the diagnostic evidence, including her MRI results and Arthritic profile, that did not indicate the level of pain alleged. He referenced her examining doctor's, Dr. Gulati's, notes that she had normal range of

motion in her spine, walked with a normal gait, performed a heel and toe walk without difficulty and had no difficulty getting on and off the examination table. He determined that the filing for unemployment benefits detracted from her credibility.[2] He found her testimony to be inconsistent with her previous statements regarding her ability to cook full meals daily, shop regularly and perform chores for up to two hours.[3] These articulated reasons provided substantial evidence the ALJ's decision to discredit the claimant's testimony.

The claimant does not argue that the ALJ's stated reasons are not supported by substantial evidence; rather, the claimant focuses on the medical evidence supporting her alleged symptoms. The claimant points the court to her patellofemoral joint arthritis, torn medial meniscus and degenerative joint disease in her knees as direct support for the claimant's testimony. The claimant's knee condition indeed does provide support for the claimant's alleged symptoms; however, the claimant must show more than medical support for her testimony. She must show that the ALJ's reasons for discrediting her testimony are not supported by substantial evidence. *See Foote*, 67 F.3d at 1562. These knee conditions, acknowledged by the ALJ, do not demonstrate a lack of substantial evidence to discredit the testimony about the effects of those conditions. Because the ALJ explicitly articulated adequate reasons to discredit the claimant's testimony, the ALJ properly applied the pain standard.

---

[2] *See Moore v. Astrue*, 5:12-CV-00755-RDP, 2013 WL 1661435, at *8 (N.D. Ala. Apr. 11, 2013) (finding that the ALJ could properly consider accepting unemployment benefits as a factor in determining the claimant's credibility).
[3] In *Pollard v. Astrue*, the court found the ALJ erred by relying on daily activities of dressing, cleaning and feeding oneself to discredit the claimant's pain testimony. 867 F. Supp. 2d 1225, 1232-33 (N.D. Ala. 2012). The court held that cooking light meals and the ability "to do activities for about 30 minutes, at which time she had to rest/change positions" were not inconsistent with debilitating back pain. *Id*. However, this case is distinguishable for two reasons: (1) the claimant in the present case performed more demanding activities – two hour chores, full meals daily, and various shopping trips, and (2) unlike in *Pollard*, the ALJ also articulated other adequate reasons for discrediting the claimant's testimony.

*Weight of Opinions*

Next, the claimant argues that the ALJ improperly attributed "significant weight" to the opinion of Dr. Carmichael, a non-examining physician. The court finds this argument unpersuasive.

When weighting medical opinions, the ALJ "must accord 'substantial' or 'considerable' weight to the opinion of a claimant's treating physician unless 'good cause' is shown to the contrary." *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982)). Further, "the 'opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician.'" *Id.* at 962 (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir.1981)). However, the ALJ can reject a physician's opinions if he articulates specific reasons supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir.2005).

The claimant contends that Dr. Carmichael's review was before Dr. Burnside's treatment of her and, thus, not based on all the evidence. In *Pollard*, the ALJ relied on two physician opinions made before the claimant's MRI. 867 F. Supp. 2d at 1231. The MRI revealed numerous thoracic and lumbar spinal irregularities, suggestions of Scheuermann's kyphosis, Schmorl's nodes, degenerative disc disease, disc bulging, facet arthropathy, and central disc protrusion. *Id.* Because their opinions were made without knowledge of these medical conditions, the court held that "[t]o assign their opinions controlling weight while at the same time rejecting the credibility of the plaintiff's pain testimony was error." *Id.* at 1232. However, in *Poellnitz v. Astrue*, the court affirmed the ALJ's reliance on reviewing physicians' opinions "even in the light of the additional evidence submitted to the AC [Appeals Council]." 349 Fed.

App'x 500, 503 (11th Cir. 2009). The court reasoned that the additional evidence "comports with the non-examining physicians' opinions." *Id*.

The claimant never discloses to the court what exactly in Dr. Burnside's treatment of her is supposed to negate or conflict with Dr. Carmichael's RFC assessment. Dr. Burnside's treatment of the claimant revealed a torn meniscus in her right knee, degenerative arthritis and a Baker's cyst. Dr. Carmichael notes in his report the claimant's "neurofibromatosis of digit" and "degenerative arthritis of knee." He further notes that the claimant had knee surgery for a medial meniscus tear. (R. 381). Unlike the MRI in *Pollard*, Dr. Burnside's treatment did not reveal any significant yet unknown medical condition. Dr. Carmichael was aware of and cited the patient's degenerative arthritis when giving his opinion. Further, a Baker's cyst is a symptom of the claimant's arthritis.[4] Again, the claimant does not explain – and the court sees no reason – why the presence of this particular symptom should negate Dr. Carmichael's assessment. The additional evidence was, thus, consistent with Dr. Carmichael's opinion and "did not provide a basis for disturbing the ALJ's decision." *Poellnitz,* 349 Fed. App'x at 503.

*RFC Determination*

Finally, the claimant contends that the ALJ's RFC determination is not based on substantial evidence. The court disagrees.

The claimant asks the court "[d]oes the objective evidence of record substantiate … that the [claimant] can stand or walk … for six hours of an eight hour work day?" However, the claimant "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison*, 355 F.3d at 1276. In proving the inability to return to past relevant work, the "regulations place a very heavy burden

---

[4] *See* The Merck Manual of Diagnosis and Therapy, *Rheumatoid Arthritis*, *available at* http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/joint_disorders/rheumatoid_arthritis_ra.html#v905273 (last visited September 16, 2012).

on the claimant." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).

After the ALJ also discredited the testimony of the claimant and a physician, the Eleventh Circuit addressed similar circumstances:

> Green argues that once the ALJ decided to discredit Dr. Bryant's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. Dr. Bryant's evaluation, however, was the only evidence that Green produced, other than her own testimony, that refuted the conclusion that she could perform light work. Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of . . . Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.

*Green v. Soc. Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. 2007).

In the present case, after the ALJ discredited the testimony of the claimant and the opinion of Dr. Gulati,[5] the claimant could not refute the ALJ's determination that she had the ability to perform medium work. Furthermore, the opinion of Dr. Carmichael provides direct support for the ALJ's findings. Therefore, substantial evidence supports the RFC determination of the ALJ. *See id.* at 924.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

---

[5] The Claimant does not argue that the ALJ erred in rejecting Dr. Gulati's opinion of the claimant's capabilities. *See Moore,* 405 F.3d at 1212 (stating that the ALJ may discredit a physician's opinions if he cites adequate reasons).

DONE and ORDERED this 24th day of September 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE